UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

       v.                                                                                                  Crim. No. 2:09-cr-130-1

Michael Olsen

## REPORT AND RECOMMENDATION
(Doc. 637, 648)

Michael Olsen, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him in the United States District Court for the District of Vermont.  (Doc. 637.)  Olsen was convicted following his pleas of guilty to multiple counts of distributing cocaine, conspiring to distribute cocaine, money laundering, and obtaining confidential phone records without authorization.  (Docs. 304, 333, 562.)  On March 9, 2011, Olsen was sentenced by United States District Judge William K. Sessions III to a term of imprisonment of 235 months, to be followed by a five-year term of supervised release.  (Doc. 562.)

Olsen claims that at the time of sentencing the court (1) utilized the wrong version of the Sentencing Guidelines Manual and (2) improperly based Olsen's sentence on an inaccurate drug quantity and an incorrect criminal history.  Olsen also asserts that he was denied his right to effective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution.  For the reasons explained below, I conclude that Olsen's claims are meritless and recommend that his § 2255 Motion be DENIED.  Because his

§2255 motion is without merit, Olsen's Motion for Appointment of Counsel (Doc. 648) is DENIED.

## Background

**I.    Superseding Indictment and Plea**

On February 11, 2010, Olsen was charged in a 20-count Superseding Indictment with numerous offenses arising from his participation in a conspiracy to distribute five or more kilograms of cocaine and five grams or more of cocaine base. Olsen was charged with conspiracy, distribution of cocaine and cocaine base, money laundering, a violation the Hobbs Act, and unlawfully accessing telephone records without authorization. (Doc. 60.) Attorney Frank Twarog was appointed to represent Olsen pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.

On September 23, 2010, Olsen appeared in the District Court to enter pleas of guilty to seven of the eight counts. There was no written plea agreement. Olsen did not plead guilty to Count 17s, which charged the Hobbs Act violation, and that count was later dismissed by the government. (Doc. 333.) At the change-of-plea hearing, Judge Sessions carefully reviewed with Olsen each count to which he was pleading guilty, the elements of each charge, and the maximum penalties he faced as a consequence of his guilty pleas. (*Id*. at 10–22.) Specifically, Olsen pleaded guilty to engaging in a conspiracy to distribute five or more kilograms of cocaine and five or more grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count 1s); knowing and intentional distribution of five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 3s); possession with intent to

2

distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 4s); three counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 14s, 15s, and 16s); and one count of obtaining confidential telephone records without authorization, in violation of 18 U.S.C. § 1039(a) (Count 20s). (*Id.*)

At the hearing, Judge Sessions engaged in the complete colloquy required by Rule 11 of the Federal Rules of Criminal Procedure. (*Id.*) Olsen confirmed that he had had a full opportunity to consult with his attorney prior to the hearing and that he was "[v]ery much" satisfied with the representation provided by Attorney Twarog. (*Id*. at 9.) Judge Sessions ascertained that Olsen understood he was pleading guilty to a Controlled Substances Act offense that carried a ten-year mandatory minimum term of imprisonment. (*Id*. at 13.) Judge Sessions explained to Olsen the constitutional rights he was waiving by his admissions of guilt. Olsen acknowledged that no threats had been made to induce him to plead guilty nor had anyone forced him in any way to plead guilty. (*Id.* at 28.) The prosecutor described the factual basis for each count to which Olsen was entering his pleas of guilty. (*Id.* at 31–40.) Olsen disputed minor aspects of the government's proffer of facts, but otherwise acknowledged the accuracy of the evidence presented in support of the essential elements of each offense. (*Id*. at 44–47.) After conducting the required Rule 11 inquiry, Judge Sessions concluded that there was a factual basis for Olsen's pleas of guilty and that they were made competently, voluntarily, and free from any undue influence. (*Id*. at 49–50.) Judge Sessions further concluded that Olsen entered his pleas with a full understanding of the charges against

him and the consequences. (*Id.* at 50.) Accordingly, Olsen's guilty pleas were accepted by the Court.

## II.   Sentencing

In January 2011, the United States Probation Office prepared a Presentence Investigation Report ("PSR") regarding Olsen. The PSR concluded that Olsen faced an imprisonment range under the Sentencing Guidelines of 360 months to life, based on an Offense Level of 40 and a Criminal History Category ("CHC") of III. (PSR ¶ 146.) This offense-level calculation was based, in part, on a determination that the conspiracy involved the distribution of 15 to 50 kilograms of cocaine. (*Id.* at ¶ 89.) Attorney Twarog initially objected to the accuracy of this conclusion but later abandoned the quantity objection, as discussed in detail below. Other factors, including application of multiple count rules, application of an enhancement for a leadership role and for obstruction of justice, and a two-level reduction for acceptance of responsibility led to the determination that the Offense Level was 40.

Prior to sentencing, Olsen was evaluated by Joseph Hasazi, Ph.D., a Burlington psychologist retained by Attorney Twarog. As Attorney Twarog has explained, Dr. Hasazi was retained to provide support for a claim that Olsen suffered a diminished capacity at the time of commission of the offenses and to document Olsen's tragic personal circumstances as part of an overall strategy to achieve a downward departure from the applicable sentencing guideline range or sentence adjustment under 18 U.S.C. § 3553(a). (Doc. 641.) Before preparing his report, Dr. Hasazi interviewed Olsen at length and conducted clinical testing of Olsen.

Attorney Twarog filed a 49-page Sentencing Memorandum asserting factual and legal objections to the application of various sentencing enhancements under the Sentencing Guidelines that had been included in the PSR, including enhancements for obstruction of justice, possession of a weapon, and the extent of Olsen's leadership role in the offense. (Doc. 531.) Twarog also argued that a departure from the Sentencing Guidelines was warranted for numerous reasons, including Olsen's diminished capacity, his tragic upbringing, and his acceptance of responsibility. Twarog asserted that the CHC of III overstated the seriousness of Olsen's criminal history. More precisely, Twarog contended that the conduct comprising some of Olsen's prior convictions also impermissibly gave rise to enhancements for specific offense characteristics in the offense-conduct determination. Finally, Twarog argued that a non-guidelines sentence was warranted under § 3553(a) for these same reasons. In sum, Twarog urged the Court to impose a sentence of 135 months rather than the 360-months-to-life range called for by the PSR. (*Id.* at 48.)

An evidentiary sentencing hearing was held over the course of two days. (Docs. 540, 541.) At the hearing, Attorney Twarog advised the Court that Olsen had abandoned his earlier objection to the quantity determination upon disclosure by the government of certain testimonial evidence. Twarog was successful in persuading the Court that inclusion of the criminal convictions found at paragraphs 115 and 116 of the PSR in Olsen's criminal history *and* as part of an obstruction-of-justice enhancement resulted in impermissible double counting. (Doc. 540 at 6–9.) As a result, Judge Sessions concluded that Olsen's CHC was I, and not III as proposed in the PSR. (Doc. 566 at 93,

95.)  Attorney Twarog was also successful in persuading Judge Sessions that the four-level increase accorded to Olsen in paragraph 92 of the PSR for a leadership role in the conspiracy was not supported by the evidence.  Twarog contended that only a two-level leadership enhancement was appropriate.  (Doc. 531 at 39–42.)  Judge Sessions agreed in part and ultimately imposed a three-level enhancement for Olsen's leadership role in the conspiracy.  (Doc. 566 at 82–85.)  Twarog also argued that Olsen should receive a three-level reduction for acceptance of responsibility under USSG §3E1.1, rather than the two-level reduction accorded to him in the PSR.  (Doc. 531 at 48.)  Judge Sessions agreed, noting Olsen's pleas of guilty and acknowledgement of responsibility, and Olsen was accorded the three-level reduction in the offense-level calculation.  (Doc. 566 at 86.)  The effect of these findings was to reduce Olsen's sentencing exposure under the Sentencing Guidelines from the 360-months-to-life range proposed in the PSR to 235–293 months.

Twarog argued for a downward departure from the sentencing range or, alternatively, a non-guideline sentence under the sentencing factors set forth in 18 U.S.C. § 3553(a).  In support of these arguments, on February 18, 2011, Twarog presented the written and oral testimony of Dr. Hasazi, an acknowledged expert in psychology.  (Doc. 541.)  Dr. Hasazi's written report, which was submitted to the Court, detailed the results of his interview and clinical testing of Olsen, and concluded that Olsen's tragic upbringing may have contributed to his commission of the offenses.  (Doc. 644-1.)  Specifically, Dr. Hasazi discussed in his report and testimony how Olsen was affected by a childhood sexual assault and the incarceration of his drug-addicted parents, opining that Olsen suffered from major depression, generalized anxiety disorder, and narcissistic

6

personality disorder with features of antisocial personality disorder. (Doc. 541 at 151–56.) The psychologist also noted that Olsen's posttraumatic stress disorder contributed to Olsen's anxiety disorder and hyper vigilance. (Doc. 644-1.) Judge Sessions questioned Dr. Hasazi extensively about his report and conclusions, and solicited Dr. Hasazi's opinion in greater detail regarding Olsen's mental impairments in relation to the likelihood of recidivism.

On March 4, 2011, Olsen appeared in Court for a continued sentencing hearing. After hearing argument of counsel, Judge Sessions made the extensive findings described above, ruling on the various Sentencing Guideline objections and motions for downward and upward departures, and addressed the statutory sentencing factors under 18 U.S.C. § 3553(a). (Doc. 566 at 82–99.) The Court denied Olsen's motions for variances and departures, and imposed a total sentence of 235 months, to be followed by a five-year term of supervised release, and special assessments totaling $700 were imposed. (*Id.* at 96.)

### III.   Direct Appeal

Olsen pursued a direct appeal of his sentence, again with benefit of counsel. In the appeal, Olsen contended that the District Court erred in applying the two-level enhancement for obstruction of justice. The Court of Appeals rejected Olsen's claim and affirmed the judgment of conviction in an unpublished Summary Order. *See United States v. Olsen*, 503 F. App'x 76 (2d Cir. 2012).

**Discussion**

**I.    Section 2255 Motion**

Olsen raises four claims in his § 2255 Motion.  First, he contends his sentence was imposed using the wrong version of the federal Sentencing Guidelines, in violation of the *Ex Post Facto* Clause of Article I, § 9, cl. 3 of the United States Constitution.  (Doc. 637 at 4.)  Next, Olsen contends the Sentencing Guidelines calculation was based on an incorrect quantity of drugs. Third, he mistakenly argues that he was sentenced based on CHC III.  (*Id.* at 5; Doc. 637-1 at ¶¶ 6–7.)  Finally, Olsen contends he received ineffective assistance of counsel when Attorney Twarog purportedly failed to raise these contentions, as well as Olsen's mental health issues, at the sentencing hearing.  (Doc. 637 at 6.)

Preliminarily, it must be noted that collateral review is not available for claims a petitioner failed to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).  Olsen has failed to raise his *ex post facto*, CHC, and drug-quantity claims on direct appeal; and he has not demonstrated cause for this failure or prejudice, nor actual innocence.  Therefore, these claims are waived.

Because these claims also form the basis for Olsen's ineffective-assistance-of-counsel claim, however, they are analyzed below.  Unlike other claims, ineffective-assistance claims may be raised for the first time in a § 2255 motion, "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538

8

U.S. 500, 504 (2003); *accord Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010).

## II.     Standards Governing Ineffective-Assistance-of-Counsel Claims

The defendant in a criminal proceeding has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, including entry of a guilty plea, *see, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), and sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).  The attorney has an "overarching duty to advocate the defendant's cause."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  In order to succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-pronged test established in *Strickland*:

> (1) he "must show that counsel's performance was deficient," so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance"; and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (citations omitted) (quoting *Strickland*, 466 U.S. at 687, 690, 694).  "The [ineffective-assistance-of-counsel] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong."  *Id.* at 85 (citing *Strickland*, 466 U.S. at 687, 697).

The defendant's burden is heavy because, at the first step of the *Strickland* analysis, the performance prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'"

9

*Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 689), viewing the circumstances counsel faced "at the time of the relevant conduct" and evaluating that conduct "from counsel's point of view," *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (internal quotation marks omitted).  The determinative question is not whether counsel "deviated from best practices or most common custom," but whether his "representation amounted to incompetence under prevailing professional norms."  *Harrington v. Richter*, 131 S. Ct. 770, 778 (2011).  As the Supreme Court stated in *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.

As noted above, at the second step of the *Strickland* analysis, the prejudice prong, the defendant must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Surmounting this "high bar" is "never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  To satisfy the prejudice prong in challenges to sentencing proceedings based on claims of ineffective assistance of counsel, a defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence.  *See generally, Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *Glover*, 531 U.S. at 203.

### III. Olsen's Ineffective-Assistance-of-Counsel Claims

#### A. *Ex Post Facto* Claim

Olsen claims that Attorney Twarog rendered ineffective assistance by failing to raise an objection to the Court's use of the 2009 Guidelines Manual in violation of the *Ex Post Facto* Clause. For a law to contravene the *Ex Post Facto* Clause, "two critical elements must be present: first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (internal quotation marks omitted), *overruled in part on other grounds in Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506, n.3 (1995); *see United States v. Kilkenny*, 493 F.3d 122, 126 (2d Cir. 2007) ("[T]he *Ex Post Facto* Clause enshrines in the Constitution a basic presumption of our law, that is, legislation in the criminal law is not to be applied retroactively.") (internal quotation marks omitted). Neither element is present here.

Olsen was convicted of committing a conspiracy which commenced in November 2004 and continued through November 2009. (Doc. 566 at 93.) He was also convicted of substantive offenses committed on specific dates in 2008 and 2009. At his March 4, 2011 sentencing hearing, the District Court used the Guidelines Manual in effect on November 1, 2009, when Olsen's last offense was committed. The PSR noted that the November 2009 Manual was appropriate because use of the Manual in effect on the date of the March 2011sentencing hearing would have resulted in a harsher guideline calculation. (PSR ¶ 87.) The PSR explained:

> Pursuant to U.S.S.G § 1B1.11, if the Court determines that the use of the
> Guidelines Manual in effect on the date the defendant is sentenced would

11

> violate the ex post facto clause of the Constitution, then the Court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed. According to Application Note 2 to § 1B1.11, the last date charged in any of the counts of conviction is November 14, 2009, as charged in count 20. Therefore, the November 1, 2009 edition has been used in this case.

(*Id.* at n.24.)

The Second Circuit has held: "A sentencing court must generally apply the version of the Guidelines that is in effect at the time of sentencing, unless there is an *ex post facto* problem." *United States v. Rodriguez*, 989 F.2d 583, 587 (2d Cir. 1993) (citation omitted). In accord, the Sentencing Guidelines state: "The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." USSG §1B1.11(a) (2008). The Guidelines provide clarification by stating: "If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." *Id*. at § 1B1.11(b)(3).

Here, to avoid any e*x post facto* concerns, the Court properly used the version of the Guidelines in effect at the time of commission of Olsen's last offense. Olsen contends that *Peugh v. United States*, 133 S. Ct. 2072 (2013) provides support for his claim that his sentence violated the *Ex Post Facto* Clause. (Doc. 637-2 at 2–3.) This reliance however is misplaced. In *Peugh*, the Supreme Court held that an *Ex Post Facto* Clause violation occurs only when a defendant is sentenced under guidelines in effect *after* commission of a criminal act, resulting in a more punitive guidelines range than would have applied under the guidelines in effect at the time the offense was committed. *Peugh*, 133 S. Ct. at 2077 ("A retrospective increase in an applicable Guidelines range . .

12

. creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation."). *Peugh* has no application here, given that Olsen was sentenced in accordance with the Guidelines in effect at the time of his commission of the offenses.[1]

Olsen does not explain why the 2004 manual should have been used to address criminal conduct that occurred in 2009. Of equal importance, Olsen fails *Strickland's* prejudice prong, as he is unable to demonstrate that he was disadvantaged in any way by use of the 2009 Manual. Olson points to no revisions between the 2004 Manual and the 2009 Manual which led the Court to impose a harsher sentence. In fact, the Drug Quantity Table found at USSG §2D1.1(c) for offenses involving the distribution of 15–50 kilograms of cocaine yields an offense level of 34 in both the 2004 Manual and the 2009 Manual. Accordingly, Olsen's contention is meritless.

### B.    Failure to Present Evidence of Posttraumatic Stress Disorder Claim

Olsen alleges that Attorney Twarog was ineffective for failing to present evidence of Olsen's posttraumatic stress disorder in mitigation of his sentence. The claim also fails as it ignores the fact that Attorney Twarog presented extensive evidence of Olsen's several mental impairments, including posttraumatic stress disorder, in an attempt to demonstrate that those impairments contributed to Olsen's commission of his crimes. Twarog's efforts clearly constitute reasonable and competent assistance.

Specifically, and as discussed above, Attorney Twarog sought a downward departure or a variance from the Sentencing Guideline range based on Olsen's diminished

---

[1] Even assuming *Peugh* has some relevance here, the Second Circuit has recently held as follows: "[T]he rule announced in *Peugh* does not constitute a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *Herrera-Gomez v. United States*, Docket No. 14-1166, 2014 WL 2722761, at *3 (2d Cir. June 17, 2014) (internal quotation marks omitted).

13

capacity and tragic personal history. (Doc. 531 at 42–43.) To that end, Twarog engaged the services of a recognized expert in the field of psychology, Dr. Hasazi.[2] Dr. Hasazi interviewed Olsen, reviewed substantial case information, and engaged in significant clinical testing of Olsen. Dr. Hasazi prepared a detailed report summarizing Olsen's tragic and brutal childhood and concluding that Olsen exhibited symptoms consistent with diagnoses of attention deficit hyperactivity disorder, posttraumatic stress disorder ("PTSD"), major depression, generalized anxiety disorder, psychoactive substance disorder, and narcissistic personality disorder with schizoid and antisocial features. (Doc. 644-1 at 2–3.) Attorney Twarog presented Dr. Hasazi's written report to the Court and elicited testimony from Dr. Hasazi to supplement and explain his conclusions.[3]

In sum, Olsen's claim fails to meet either the performance or the prejudice prongs of *Strickland*. He has failed to identify any error, much less constitutional error, in Attorney Twarog's performance. Rather, Twarog's decision to engage the services of a noted psychologist, and to present that psychologist's opinions, constituted zealous and effective advocacy. The record reveals that Judge Sessions carefully balanced the evidence of Olsen's impairments against the evidence of the violence and sophisticated means employed by Olsen to accomplish the goals of this massive conspiracy. (Doc. 566 at 90–91.)

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). A valid yet

---

[2] The government stipulated to Dr. Hasazi's qualifications as an expert in psychology.

[3] It appears that Dr. Hasazi's report was not formally admitted as evidence, but it was marked as an exhibit to the Doctor's testimony and Judge Sessions made frequent reference to the conclusions set forth therein in his discussions with the psychologist. (*See* Doc. 541 at 151, 154, 179.)

unsuccessful strategy is not ineffective assistance of counsel. *Id.* Finally, even assuming, *arguendo,* that Attorney Twarog's performance was somehow deficient in this regard, Olsen has failed to show that he would have received a lesser sentence had Twarog given even more emphasis to the evidence of Olsen's PTSD in his argument to the Court.

### C.     Drug-Quantity-Objection Claim

Olsen asserts that Attorney Twarog was ineffective because he failed to object to the drug quantity attributed to Olsen as part of the Sentencing Guideline calculation. This contention is similarly meritless, as Olsen cannot show that the strategic decision to withdraw the objection to the drug-quantity calculation violated either the performance or the prejudice prong of *Strickland*.

As noted above, Olsen was convicted of engaging in a conspiracy to distribute five or more kilograms of cocaine and five or more grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Following Olsen's guilty plea, the Probation Office prepared a PSR concluding that, for purposes of calculating his offense level under the Sentencing Guidelines, Olson was responsible for the distribution of between 15 and 50 kilograms of cocaine. *See* USSG §2D1.1(a)(5), (c). This drug-quantity determination led to application of level 34 from the Sentencing Guidelines Drug Quantity Table found at USSG §2D1.1(c). (PSR ¶ 88.) Attorney Twarog initially objected to this determination during the PSR resolution process, asserting that Olson was responsible for the distribution of only 5–15 kilograms of cocaine, not 15–50 kilograms. (PSR Addendum at 91.)

On February 14, 2011, however, Attorney Twarog filed a lengthy Sentencing Memorandum in which the previously asserted objection to the 15–50 kilogram quantity was withdrawn. (Doc. 531 at 34.) Attorney Twarog explained that the disclosure of the anticipated testimony of Alisson Simpson had "clarifie[d] this issue, resulting in an agreement by [Olsen] that he is responsible for conspiring to distribute 15–50 kilograms of cocaine." (*Id* at 34.) During the March 4, 2011 sentencing hearing, Attorney Twarog confirmed that the objection was being withdrawn in light of the disclosure of information from Simpson. (Doc. 566 at 53.) This concession was apparently made as part of Attorney Twarog's strategy to achieve a full three-point reduction in the offense-level calculation for a manifestation of acceptance of responsibility and, more importantly, a downward departure or variance to a sentence of 135 months. Addressing his initial quantity objection and the subsequent withdrawal of the objection, Attorney Twarog explained to the Court:

> Once the government met its burden to produce to probation the documents, [including Simpson's statement] we withdrew [the quantity objection]. That's the kind of frivolity that I would agree with [the prosecutor] you might deny acceptance to something for if [Olsen] persisted in that. . . . That's not the case. The Government made its point, established by the preponderance of evidence . . . , so we withdrew that.

(*Id*.)

Under the performance component of *Strickland*, a court "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington*, 131 S. Ct. at 787 (internal quotation marks omitted). The decision to forego a quantity objection when confronted with the prospect of contrary evidence is just the type of strategic decision that lies firmly in the ambit of

16

trial counsel's discretion. *See United States v. Cohen*, 427 F.3d 164, 170–71 (2d Cir. 2005) ("As with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics' and thus are 'virtually unchallengeable' absent exceptional grounds for doing so.") (quoting *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997)).

Olsen also fails to demonstrate that he suffered any prejudice by the quantity stipulation.  More precisely, Olsen has failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the sentencing proceeding would have been different.   As explained in the PSR, the evidence provided by multiple cooperators who had pled guilty and were prepared to testify amply supported the conclusion that Olsen and his fellow conspirators distributed between 15–50 kilograms of cocaine.  (PSR ¶ 89.)  The evidence supporting this conclusion is set forth in thorough and precise detail in the Offense Conduct section of the PSR. (PSR ¶¶ 8–78.)  Olsen makes no effort to explain why this overwhelming evidence was erroneous. He therefore cannot demonstrate that the result of his sentencing would have been different had Attorney Twarog continued to assert a quantity objection.

### D.     Criminal-History-Calculation Claim

Finally, Olsen claims that Attorney Twarog failed to object to his placement in CHC III and should have argued for a sentence based on CHC I.  The argument easily fails because Twarog did assert the objection and Olsen was in fact sentenced based on CHC I, not CHC III.  (*See* Doc. 566 at 93, 95.)

### IV. Motion for Appointment of Counsel

Olsen has also moved for the appointment of counsel, arguing that he needs the assistance of counsel to present his case. (Doc. 648.) There is no constitutional right to appointed counsel when a person convicted of a crime brings a "collateral attack" upon his conviction or sentence. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, as in any civil case, the decision to assign counsel lies clearly within the court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260–61 (2d Cir. 1984). Assuming the movant has shown that he is sufficiently indigent, the factors to be considered include the following: (1) whether the indigent's position seems likely to be of substance; (2) whether the indigent is able to investigate the crucial facts concerning his claim and present his case; (3) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact-finder; (4) whether the legal issues involved are complex; and (5) whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (*citing Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986)); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Here, as explained above, Olsen's claims lack substantive merit. Moreover, Olsen has been able to adequately present his case. This matter does not involve complex legal issues. Olsen advances no special reason to support the appointment of counsel. Finally, I find that the "interests of justice" do not require that counsel be appointed in this case. 18 U.S.C. § 3006A(a)(2)(B). Accordingly, Olsen's Motion to Appoint Counsel (Doc. 648) is DENIED.

**Conclusion**

In ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (section 2255 does not permit summary dismissals of motions that present facially valid claims). However, § 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. *See Machibroda*, 368 U.S. at 494; *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987). Olsen has failed to show specific facts that if proved at a hearing would warrant the granting of his Motion. Accordingly, no hearing is required.

Based on the foregoing, I recommend that Olsen's § 2255 Motion to Vacate, set aside, or correct his sentence (Doc. 637) be DENIED.

Dated at Burlington, in the District of Vermont, this 5th day of August, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).